George 1. Schraer, Attorney at Law
_____
NAME

5173 Waring Road, #247, San Diego, CA 92120
_____
PRISON IDENTIFICATION/BOOKING NO.

Phone & Fax: (619) 582-6047; CA State Bar No. 51520
_____
ADDRESS OR PLACE OF CONFINEMENT

Email: geoschraer@aol.com; Attorney for Petitioner
_____
Note:   It is your responsibility to notify the Clerk of Court in writing of any change of address. If represented by an attorney, provide his or her name, address, telephone and facsimile numbers, and e-mail address.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

THOMAS JOSEPH SNIDER

_____
FULL NAME (*Include name under which you were convicted* )

Petitioner,

v.

CRAIG KOENIG, Acting Warden, Correctional
Training Facility, Soledad

_____
NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER

Respondent.

CASE NUMBER:

CV _____
To be supplied by the Clerk of the United States District Court

☐ _____ AMENDED

**PETITION FOR WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY
28 U.S.C. § 2254**

PLACE/COUNTY OF CONVICTION  Los Angeles _____
PREVIOUSLY FILED, RELATED CASES IN THIS DISTRICT COURT
(*List by case number* )
CV _____
CV _____

## INSTRUCTIONS - PLEASE READ CAREFULLY

1.   To use this form, you must be a person who either is currently serving a sentence under a judgment against you in a California state court, or will be serving a sentence in the future under a judgment against you in a California state court. You are asking for relief from the conviction and/or the sentence. This form is your petition for relief.

2.   In this petition, you may challenge the judgment entered by only one California state court. If you want to challenge judgments entered by more than one California state court, you must file a separate petition for each court.

3.   Make sure the form is typed or neatly handwritten. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

4.   Answer all the questions. You do not need to cite case law, but you do need to state the federal legal theory and operative facts in support of each ground. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a legal brief or arguments, you may attach a separate memorandum.

5.   You must include in this petition all the grounds for relief from the conviction and/or sentence that you challenge. You must also state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

6.   You must pay a fee of $5.00. If the fee is paid, your petition will be filed. If you cannot afford the fee, you may ask to proceed *in forma pauperis* (as a poor person). To do that, you must fill out and sign the declaration of the last two pages of the form. Also, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account at the institution. If your prison account exceeds $25.00, you must pay the filing fee.

7.   When you have completed the form, send the original and two copies to the following address:
   Clerk of the United States District Court for the Central District of California
   United States Courthouse
   ATTN: Intake/Docket Section
   255 East Temple Street, Suite TS-134
   Los Angeles, California 90012

PLEASE COMPLETE THE FOLLOWING (*check appropriate number*):

This petition concerns:
1.  ☑ a conviction and/or sentence.
2.  ☐ prison discipline.
3.  ☐ a parole problem.
4.  ☐ other.

## PETITION

1.  Venue

    a.  Place of detention <u>Thomas Joseph Snider, BB7537, C.T.F., P.O. Box 705, Soledad, CA 93960</u>

    b.  Place of conviction and sentence <u>Los Angeles, CA</u>

2.  Conviction on which the petition is based (*a separate petition must be filed for each conviction being attacked*).

    a.  Nature of offenses involved (*include all counts*) : <u>1. Lewd act on child under 14 -- 3 counts (1, 42, 47). 2. Lewd act on child of 14 or 15 -- 26 counts (2, 3, 5-11, 14-21, 24, 25, 28-31, 33, 35-37). 3. Annoying or molesting a child under 18 -- 8 counts (4, 5, 13, 22, 26, 27, 41, 46).</u>

    b.  Penal or other code section or sections: <u>1. Penal Code 288(a). 2. Penal Code 288(c)(1). Penal Code 647.6(a)(1).</u>

    c.  Case number: <u>YA092267</u>

    d.  Date of conviction: <u>October 13, 2016</u>

    e.  Date of sentence: <u>October 28, 2016</u>

    f.  Length of sentence on each count: <u>15 years to life each on counts 1, 42, 47. 2 years on count 2. 8 months each on counts 6, 8, 10-11, 14, 16-20, 24-25, 28-31, 33, 35-37. 364 days each on counts 4, 13, 22, 27, 41, 46.</u>

    g.  Plea (*check one*):

        ☑ Not guilty

        ☐ Guilty

        ☐ Nolo contendere

    h.  Kind of trial (*check one*):

        ☑ Jury

        ☐ Judge only

3.  Did you appeal to the California Court of Appeal from the judgment of conviction?      ☑ Yes  ☐No

    If so, give the following information for your appeal (*and attach a copy of the Court of Appeal decision if available*):

    a.  Case number: <u>B280572</u>

    b.  Grounds raised (*list each*):

        (1) <u>Denial of due process/prosecutorial misconduct for misstating burden of proof during closing argument.</u>

        (2) <u>Denial of due process/prosecutorial misconduct for arguing jury should do justice for the victims.</u>

(3) Ineffective assistance of counsel for failure to object to the two instances of prosecutorial misconduct.

(4) Cumulative effect of the misconduct requires reversal.

(5) _____

(6) _____

c. Date of decision: June 5, 2018

d. Result Judgment affirmed.

4. If you did appeal, did you also file a Petition for Review with the California Supreme Court of the Court of Appeal decision?    ☑ Yes    ☐ No

If so, give the following information *(and attach copies of the Petition for Review and the Supreme Court ruling if available)*:

a. Case number: S249873

b. Grounds raised *(list each)*:

(1) Denial of due process/prosecutorial misconduct for misstating burden of proof during closing argument.

(2) Denial of due process/prosecutorial misconduct for arguing jury should do justice for the victims.

(3) Ineffective assistance of counsel for failure to object to the two instances of prosecutorial misconduct.

(4) Cumulative effect of the misconduct requires reversal.

(5) _____

(6) _____

c. Date of decision: August 15, 2018

d. Result Petition for review denied.

5. If you did not appeal:

a. State your reasons _____

_____

_____

_____

b. Did you seek permission to file a late appeal?    ☐ Yes    ☐ No

6. Have you previously filed any habeas petitions in any state court with respect to this judgment of conviction?
☑ Yes    ☐ No

If so, give the following information for each such petition *(use additional pages, if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a. (1) Name of court: Court of Appeal, Second Appellate District, Division One

(2) Case number: B285006

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*:    September 12, 2017

(4) Grounds raised *(list each)*:

(a) Failure of prosecutor to timely disclose material exculpatory evidence _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: June 5, 2018 _____

(6) Result    Petition denied.  Note, petitioner filed a timely petition for review in the California Supreme _____
Court which was denied on August 15, 2018, in case number S249850. _____

(7) Was an evidentiary hearing held?    ☐ Yes   ☑ No


b.   (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

(7) Was an evidentiary hearing held?    ☐ Yes   ☐ No


c.   (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?        ☐ Yes ☐ No

7.   Did you file a petition for certiorari in the United States Supreme Court?        ☐ Yes   ☑ No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

8.   For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than five grounds.  Summarize briefly the facts supporting each ground.  For example, if you are claiming ineffective assistance of counsel, you must state facts specifically setting forth what your attorney did or failed to do.

**CAUTION:**    *Exhaustion Requirement*:  In order to proceed in federal court, you must ordinarily first exhaust your state court remedies with respect to each ground on which you are requesting relief from the federal court.  This means that, prior to seeking relief from the federal court, you first must present all of your grounds to the California Supreme Court.

a.   Ground one: Denial of due process/prosecutorial misconduct for misstating burden of proof during closing argument.

(1) Supporting FACTS: During closing argument the prosecutor argued that the jury should find petitioner guilty because that was the most reasonable explanation or conclusion.

(2) Did you raise this claim on direct appeal to the California Court of Appeal?        ☑ Yes        ☐ No
(3) Did you raise this claim in a Petition for Review to the California Supreme Court?        ☑ Yes        ☐ No
(4) Did you raise this claim in a habeas petition to the California Supreme Court?        ☐ Yes        ☑ No

b.   Ground two: Denial of due process/prosecutorial misconduct for arguing the jury should do justice for the victim.

(1) Supporting FACTS: During closing argument, the prosecutor argued that the jury should do justice for the victim.

(2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☑ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☑ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☑ No

c.  Ground three:  Counsel provided ineffective assistance when he failed to object to the improper closing arguments set for in grounds 1 and 2.

(1) Supporting FACTS:  Defense counsel did not object to the improper arguments set forth in grounds 1 and 2.  This failure constituted ineffective assistance of counsel.

(2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☑ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☑ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☑ No

d.  Ground four: The cumulative effect of the two instances of prosecutorial misconduct require reversal.

(1) Supporting FACTS:  The prosecutorial misconduct set forth in grounds 1 and 2 should be viewed cumulatively to determine if they had an injurious impact on petitioner's trial.

(2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☑ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☑ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☑ No

e.  Ground five:

(1) Supporting FACTS:

(2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☐ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?   ☐ Yes   ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?   ☐ Yes   ☐ No

9. If any of the grounds listed in paragraph 8 were not previously presented to the California Supreme Court, state briefly which grounds were not presented, and give your reasons: _____

_____

_____

10. Have you previously filed any habeas petitions in any federal court with respect to this judgment of conviction?

☐ Yes   ☑ No

If so, give the following information for each such petition (use additional pages, if necessary, and attach copies of the petitions and the rulings on the petitions if available):

a. (1) Name of court: _____

(2) Case number: _____

(3) Date filed (or if mailed, the date the petition was turned over to the prison authorities for mailing): _____

(4) Grounds raised (list each):

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?   ☐ Yes ☐ No

b. (1) Name of court: _____

(2) Case number: _____

(3) Date filed (or if mailed, the date the petition was turned over to the prison authorities for mailing): _____

(4) Grounds raised (list each):

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?      ☐ Yes ☐ No

11. Do you have any petitions now pending (i.e., filed but not yet decided) in any state or federal court with respect to this judgment of conviction?      ☐ Yes ☑ No

If so, give the following information *(and attach a copy of the petition if available)*:

(1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

12. Are you presently represented by counsel?      ☑ Yes ☐ No

If so, provide name, address and telephone number: George L. Schraer, 5173 Waring Road, #247, San Diego, CA 92120, (619) 582-6047.

WHEREFORE, petitioner prays that the Court grant petitioner all relief to which he may be entitled in this proceeding.

s/George L. Schraer
*Signature of Attorney (if any)*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on Oct. 28, 2019            s/George L. Schraer, Attorney for Petitioner
_____                _____
*Date*                               *Signature of Petitioner*

**ATTACHMENT A**

**OPINION OF THE CALIFORNIA COURT OF APPEAL**

Filed 6/5/18

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION ONE

COURT OF APPEAL – SECOND DIST.

**FILED**

Jun 05, 2018

**JOSEPH A. LANE, Clerk**

ccassidy          **Deputy Clerk**

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>THOMAS JOSEPH SNIDER,<br><br>  Defendant and Appellant. | B280572<br><br>(Los Angeles County<br>Super. Ct. No. YA092267) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark S. Arnold, Judge.  Affirmed.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Defendant Thomas Joseph Snider was a teacher and wrestling coach at Torrance Unified High School (the High School). Following a jury trial, he was convicted of numerous counts of lewd acts with a child, lewd acts with a child under fourteen, and sexual molestation.[1] The conduct underlying the convictions—inspections of male wrestlers' genitals and massaging injured wrestlers—was undisputed. Defendant

---

[1] Undesignated statutory citations are to the Penal Code.

Section 288, subdivision (a) (288(a)) provides: "(a) Except as provided in subdivision (i), any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

Section 288, subdivision (c)(1) (288(c)(1)) provides: "Any person who commits an act described in subdivision (a) with the intent described in that subdivision, and the victim is a child of 14 or 15 years, and that person is at least 10 years older than the child, is guilty of a public offense and shall be punished by imprisonment in the state prison for one, two, or three years, or by imprisonment in a county jail for not more than one year. In determining whether the person is at least 10 years older than the child, the difference in age shall be measured from the birth date of the person to the birth date of the child."

Section 647.6, subdivision (a)(1) (647.6(a)(1)) provides: "Every person who annoys or molests any child under 18 years of age shall be punished by a fine not exceeding five thousand dollars ($5,000), by imprisonment in a county jail not exceeding one year, or by both the fine and imprisonment."

2

claimed that he lacked the intent necessary to be convicted of any crime.

On appeal, defendant argues that the prosecutor committed misconduct during closing argument by diluting the prosecution's burden of proof and inflaming the passions of jurors. Defendant recognizes that his claim of prosecutorial misconduct was forfeited but argues that his counsel provided ineffective assistance in failing to object to the alleged misconduct. We conclude that the prosecutor did not commit misconduct and therefore counsel was not ineffective in failing to object. Even assuming misconduct, it was not prejudicial. We affirm the judgment.

## FACTUAL BACKGROUND

### A. Defendant Institutes Skin Examinations for High School Students on the Wrestling Team

Skin infections frequently plague wrestlers and may be transmitted by touching an infected person or a dirty mat. The governing body overseeing high school sports recommends examining wrestlers' skin to reduce the spread of infection. The recommendation does *not* include nude examinations or the examination of a wrestler's genitals. Because wrestlers wear a uniform (known as a singlet) during their matches and practices, the wrestlers do not touch other wrestlers' genitals or buttocks. According to the assistant wrestling coach at the High School, nude skin examinations do not reduce the spread of skin infections.

As noted, skin rashes may be transmitted by dirty mats, on which the wrestlers practice and compete. The mats at the High School were old and dirty. In 2013, when he began his

3

tenure as head coach, defendant started skin examinations for the male students on the wrestling team.  The female students on the wrestling team used the same mats as the male wrestlers, but they were not checked for skin infections, except at matches.

Defendant's method of examining the male wrestlers was largely undisputed.  Wrestlers were first checked while wearing their underwear.  Defendant would then designate certain wrestlers for nude skin examinations.  During the nude inspections, defendant would ask the student to move his penis and scrotum.  Defendant would bend down and examine the student's genitals using a flashlight.  The only real dispute regarding defendant's method for the nude skin inspections was whether he touched some of the students' genitals as part of the inspection.

It was undisputed that defendant observed the male wrestlers shower after wrestling practice.  Some but not all wore underwear in the showers.  Defendant did not dispute that he massaged injured wrestlers, or that he asked them to undress for the massage and cover themselves with only a hand towel.

In January 2015, Assistant Principal Eric Spotts was told that defendant was conducting nude skin examinations.  When Spotts asked defendant, defendant lied to Spotts, telling him that the students were clothed during all examinations.  At trial, defendant admitted that he lied to Spotts.  According to defendant, he lied because he "really and truly didn't think [he] was doing anything wrong."

## B.    Websites With Gay Pornography Were Viewed On Defendant's Computer

Secret Service Agent Paul Thomas specialized in computer forensics.  He analyzed a computer seized from defendant's

4

bedroom.  At the relevant time, defendant was the only user. Defendant did not dispute that he owned and used the computer.

By reviewing items saved in unallocated space,[2] Agent Thomas concluded that 77 gay pornography sites "were probably visited."  They included the following:  (1) "young Asian boys"; (2) "gay Thai boys"; (3) "asexstories.com"; (4) "twink," a reference to young gay boys; (5) "gayboytube.com"; and (6) "twink. Teen boys."  The user searched for "gay boys, plus boy, [and] plus videos."

Agent Thomas was able to correlate dates with some of the sites visited on defendant's computer.  On September 6, 2014, "A Barely Legal Brent Corrigan Banged Bare" was accessed. That same day a google search was conducted for "gay boy videos."  On March 2, 2014, the site "cute Asian bedroom jerk" was visited.  Also on March 2, 2014, "outpersonal.com"; "find gay tube-penis dockers-howdys video scene"; and "gay Asian boy bareback story" were visited.  Web history showed the following videos were viewed:  "boysdicktube.com/play"; "Teengayporntube.com/video/young-college stud gets fucked"; and "xvideos.com/video, twink get rimmed and fucked by bear two gay boys."

Agent Thomas acknowledged that some of the sites were "pop-ups," sites that appear on a computer without any user search.  Pop-ups can be stored in unallocated space.  Jurors were shown a video which distinguished the pop-ups from the videos watched on defendant's computer.

---

[2] Agent Thomas explained that unallocated space is a part of a computer's hard drive that retains files, documents, and searches deleted by the user.

Defendant's phone included searches for the following: (1) "findgaytube.com"; (2) "gay Asian boy bareback story"; (3) "gay Asian boy video"; (4) "cute Asian bedroom jerk"; (5) "boypornplus.com"; (6) "membersgotgayxxxdates.com"; (7) "jizzroulette.com"; and (8) "adultfriendfinder.com." Those sites were visited on at least three different days.

**C.      Defendant Admits Most of the Allegations but Claims that Nude Genital Checks Were Necessary For Eradicating Skin Infections**

Defendant testified in his defense at trial. He was born in November 1967. Prior to teaching at the High School, defendant taught at Madrona Middle School. In 1993, defendant served as an assistant wrestling coach at the High School. In 2013, defendant became the head wrestling coach at the High School. Defendant also assisted with a youth wrestling program.

Defendant testified that as soon as he became head coach at the High School, he noticed the mats used by the wrestlers were old and dirty. He was concerned and therefore developed a plan to eradicate skin disease in the wrestling program. Part of the plan required students to shower after practice. Defendant supervised the showers by sitting on a bench in front of the showers. According to defendant, most of the wrestlers showered in boxer shorts, but some showered nude.

Defendant also initiated skin checks. When a student asked if he had ringworm, defendant would check all male students on the wrestling team for ringworm. The wrestlers would individually enter a storage room (near the locker room), clothed only in their underwear. According to defendant, when he observed a skin infection, he conducted a nude skin check.

6

Defendant explained his methodology for a nude skin examination as follows: "I asked the students to pull down their boxer shorts, or pull down their shorts. . . . I visually inspected them . . . then I asked them to grab the tip of their penis, pull their penis up and looked underneath. [¶] I asked them to take their two fingers and pull up on their scrotum. And . . . I visually inspected that. [¶] I also asked them to turn around. And I looked at their back side, but I didn't ask them to do anything there."

Defendant testified that he believed the nude skin inspections were necessary based on his experience with ringworm. According to defendant, in 1995, he used bleach to treat ringworm, and as a result of sitting in a bath with water and a half-gallon of bleach, his "genitals were bleached white." Defendant testified that he started the nude skin inspections because he was "concerned for [his] wrestlers and future embarrassment." Defendant testified he never touched any student's genitals. As set forth below, this was contradicted by the victims' testimony about defendant's touching.

Defendant admitted that he massaged male wrestling students who were injured. Defendant admitted that those students were covered only by a hand towel. He also admitted that one student's towel fell to the ground during a massage. Defendant explained that the small towel was necessary when a student's boxer shorts were "interfering" with the massage.

Defendant was not asked whether his intent in conducting the genital inspections and massages was to sexually arouse himself or the male students. On cross-examination, he testified that checking the wrestlers' genitals, as he crouched down in a dimly lit room did not create a "sexual image." Defendant did *not*

7

testify that he lacked the intent for sexual arousal or gratification.  Defendant was not asked whether he was sexually interested in adolescent boys.

Defendant denied watching pornography.  He believed the pornography was saved on his computer because he *once* searched for a video on homosexuality in order to explain homosexuality to his daughter.  He testified that his search caused pornography sites to pop up on his computer.  Defendant testified that sometimes other people used his phone.

Defendant was a wrestler his freshman and sophomore years in high school.  Although at trial defendant admitted that he was never a state wrestling champion, he previously told multiple people that he had obtained that title.  In a recorded conversation played to jurors, defendant boasted to a police officer about winning the state championship.

**D.    The Victims' Testimony**

We summarize only the salient details from the victims' testimony, and enumerate them in the order listed in the information.  Except for J.D. and F.R., whose contact with defendant dated back to middle school, the other victims were on the High School wrestling team when defendant was the head coach.  Some also participated in a youth program that defendant supervised.[3]

---

[3] The victims were asked if they or their parents had joined a civil lawsuit based on defendant's conduct.  Some testified affirmatively; others did not know if they had joined.

8

*1. A.F. (Count 1)*
*Guilty one count 288(a)*

When he was almost 13 years old, A.F. was involved in a youth wrestling program. Defendant told A.F. that in order to wrestle, he had to undergo a skin inspection. As part of the examination, defendant pulled down A.F.'s underwear and touched his buttocks. A.F. told his father that defendant pulled down his underwear.

*2. L.M. (Counts 2-5)*
*Guilty two counts of 288(c)(1)*
*Guilty two counts 647.6(a)(1)*

L.M. was 14 when he started wrestling at the High School. Defendant conducted about six nude inspections of L.M. About four times, defendant touched L.M.'s buttocks and scrotum. Before touching L.M.'s buttocks, defendant warned L.M. he would "spread [L.M.'s] butt cheeks." Other times defendant asked L.M. to lift his penis and scrotum.

*3. K.I. (Counts 6 and 7)*
*Guilty two counts section 288(c)(1)*

K.I. wrestled in 2013 and 2014 when he was 14 and 15 years old. About five times defendant asked him to remove his boxer shorts and lift his penis so that defendant could inspect his genitals. K.I. complied, and defendant inspected his genitals. Defendant spread K.I.'s buttocks. Specifically, defendant "grabbed" K.I.'s buttocks and spread them apart.

9

4. *J.T. (Counts 8 and 9)*
  *Guilty two counts section 288 (c)(1)*

J.T. started wrestling at the High School when he was 14. About four times, defendant told J.T. to remove his underwear for a skin examination.  Defendant used his hands to spread J.T.'s buttocks.  During the first skin inspection, defendant did not touch J.T.'s genitals but asked J.T. to move them.  During the second skin inspection, defendant applied cream to J.T.'s scrotum.

5. *T.L. (Count 10)*
  *Guilty one count section 288(c)(1)*

T.L. was 14 when he started wrestling at the High School. Defendant examined T.L. while T.L. was nude.  At defendant's instruction, T.L. removed his clothing and lifted his penis and scrotum.  Defendant also asked T.L. to spread his buttocks. Defendant examined T.L.'s genitals and buttocks.

6. *K.S. (Counts 11-13)*
  *Guilty one count 288(c)(1)*
  *Guilty one count 647.6(a)(1)*
  *Not guilty one count 288(c)(1)*

K.S. started wrestling at the High School when he was 14. Defendant told K.S. that skin examinations were required to wrestle.  During one such inspection, at defendant's instruction, K.S. removed his clothing and moved his penis and scrotum. Defendant inspected K.S.'s genitals and buttocks.

On a separate occasion, K.S. was required to enter the storage room with three other students on the wrestling team. Defendant told K.S. to remove his underwear and inspected

10

K.S.'s genitals.  Defendant told K.S. to lift his penis and scrotum and to turn around.  Defendant told the other three wrestlers to do the same.

K.S. told defendant he did not want to be touched because K.S. heard defendant had put cream on J.T.'s scrotum.  K.S. saw C.S. sit in defendant's lap as defendant massaged his shoulders.  K.S. felt uncomfortable when defendant watched him shower.

### 7.     *T.H. (Counts 14-16)*
### *Guilty three counts 288(c)(1)*

T.H. started wrestling at the High School when he was 14.  Defendant conducted nude skin examinations on T.H.  Each time, at defendant's instruction, T.H. lifted his penis and scrotum.

Defendant massaged T.H.'s groin area twice.  Defendant instructed T.H. to remove his underwear.  During the first massage, T.H. was lying on his back.  His legs were spread over a bench.  Defendant told him to remove his boxer shorts and gave him a small towel to cover his genitals.  Defendant sat between T.H.'s legs and massaged T.H.'s upper thighs.  The towel slipped off, and defendant continued to massage T.H.

During the second massage, T.H. lay face down, wearing only boxer shorts.  Defendant massaged T.H.'s thigh and touched T.H.'s penis.  T.H. felt defendant's finger and palm on his penis.  Defendant removed his hand when another student entered the room.  T.H. testified that he was not aroused; no one asked if defendant was aroused.

On a third occasion, defendant touched T.H.'s scrotum ostensibly to determine if he had a hernia.  T.H. was wearing boxer shorts at the time, and defendant put his hand under the boxer shorts.  Defendant told T.H.: " 'It might be a hernia, I am going to feel your scrotum.' "

11

8.    *A.L. (Count 17)*
      *Guilty one count 288(c)(1)*

A.L. was 14 when he started wrestling at the High School. A.L. had a skin infection on his arm, and defendant told him that he needed to inspect A.L.'s genitals because "sometimes we would go to the restroom without washing our hands and . . . touch other parts of our body . . . [which] could also get infected." Defendant inspected A.L.'s genitals two or three times. During these inspections, at defendant's instruction, A.L. lifted his penis and scrotum.

9.    *A.M. (Count 18)*
      *Guilty one count 288(c)(1)*

A.M. was 14 when he started wrestling at the High School. Defendant told A.M. to remove his underwear and defendant examined A.M.'s genitals. At defendant's instruction, A.M. moved his penis and scrotum.

9.    *A.M.2 (Count 19)*
      *Guilty one count 288(c)(1)*

A.M.2 started wrestling at the High School when he was 14. Defendant checked A.M.2's genitals once. Defendant told A.M.2 to remove his clothes. Defendant touched A.M.2's penis and testicles. Defendant inspected but did not touch A.M.2's buttocks.

10.    *A.O. (Counts 20, 21, and 47)*
       *Guilty two counts 288(c)(1)*
       *Guilty one count 288(a)*

A.O. started wrestling in the summer when he was 13. During a nude skin inspection, defendant pulled down A.O.'s

12

boxer shorts and inspected A.O.'s genitals. Twice, defendant asked A.O. to lift the tip of his penis, to lift his scrotum, and to spread his buttocks. A.O. complied with defendant's instructions. Defendant conducted six nude genital checks on A.O.

Defendant massaged A.O. when A.O. was 13. A.O. was laying on a bench with his legs propped on top of defendant's legs. Defendant told A.O. to remove his clothing, and A.O. wore only boxer shorts. Defendant massaged A.O.'s injured thighs. Defendant then told A.O. to remove his boxer shorts and gave A.O. a small towel to cover his genitals. Defendant continued to massage A.O.'s inner thigh.

> 11. *N.R. (Counts 22-23)*
> *Not guilty two counts 288(c)(1)*
> *Guilty one lesser included offense 647.6(a)(1)*

N.R. started wrestling when he was 14. Defendant asked N.R. to remove his clothes, and defendant inspected him. N.R. did not remember whether defendant touched him. N.R. did not remember if defendant asked him to touch or move any part of his body.

> 12. *M.M. (Counts 24-26)*
> *Guilty two counts 288(c)(1)*
> *Guilty one lesser included offense 647.6(a)(1)*

M.M. was 14 when he started wrestling and was asked to participate in two nude skin examinations. At defendant's instruction, M.M. undressed and lifted his penis and scrotum. Defendant also checked M.M.'s buttocks. On one occasion, three other wrestlers were in the storage room while M.M. was inspected. M.M. heard defendant tell each to lift his penis, scrotum, and to turn around.

13

Defendant massaged M.M. twice.  When M.M. hurt his back, defendant told M.M. to undress and lie on a desk for the massage.  M.M. took off all of his clothes and was massaged naked.  Defendant massaged M.M.'s back and then massaged his "butt area and close to [his] groin area."  Defendant then told M.M. to "roll over" and massaged M.M.'s groin area.

When M.M. hurt his hamstring, defendant told him to lie face down on a bench in the locker room.  M.M. was wearing underwear.  Defendant massaged M.M.'s hamstring, the back of his groin, and his buttocks.

M.M. saw defendant massage J.W.  He observed G.A. performing push-ups without clothing.  M.M. explained that defendant had told G.A. to perform the push-ups before G.A. could have a towel.  M.M. felt uneasy when defendant watched the wrestlers shower.

> 13.   *G.A. (Count 27)*
> *Guilty one count 647.6 (a)(1)*

G.A. was 16 when he joined the wrestling program at the High School.  Defendant told G.A. to participate in a nude skin inspection as a condition of joining the team.  Defendant conducted three nude skin inspections of G.A.  Defendant told G.A. to raise his penis, move it from side to side, and to raise and move his scrotum in the same manner.

Once, G.A. asked for a towel, and defendant told G.A. he had to perform 50 nude push-ups to receive the towel.  G.A. felt humiliated as he performed the push-ups.

14

*14.   J.A. (Count 28)*
*Guilty one count 288(c)(1)*

J.A. was 14 when he joined the wrestling program.  During a nude skin inspection, defendant "grabbed" J.A.'s scrotum.

*15.   J.B. (Count 29)*
*Guilty one count 288(c)(1)*

J.B. participated both in the youth wrestling program and the high school wrestling team.  When he was 14, defendant conducted a nude skin examination.  At defendant's instruction, J.B. removed his clothing and moved his genitals.

*16.   C.D. (Count 30)*
*Guilty one count 288(c)(1)*

C.D. was 15 when he started wrestling at the High School. C.D. was in the storage room with other wrestlers when defendant told each to remove his underwear.  Defendant told C.D. to lift his scrotum.  Defendant then touched C.D.'s scrotum.

*17.   D.R. (Counts 31-32)*
*Guilty one count 288(c)(1)*
*Not guilty one count 288(c)(1)*

D.R. was 14 when he started wrestling.  Defendant required him to participate in three or four nude skin inspections. Defendant asked D.R. to remove his clothing.  At defendant's instruction, D.R. lifted his genitals and spread his buttocks.

*18.    J.S. (Count 33)*
*Guilty one count 288(c)(1)*

J.S. was 15 when he joined the wrestling program. Defendant requested J.S. participate in a nude skin inspection. Defendant told J.S. to pull down his underwear and lift his scrotum.  Three other wrestlers were present when defendant inspected J.S.'s genitals.

*19.    J.W. (Count 34)*
*Not guilty 288(c)(1)*

Defendant did not conduct a nude genital inspection of J.W. Defendant massaged J.W. near his groin.

*20.    C.S. (Count 35)*
*Guilty 288(c)(1)*

C.S. was 15 when he joined the wrestling program. Defendant conducted more than two nude skin inspections on C.S.  Defendant told C.S. to lift the tip of his penis to allow defendant to inspect the underside.  Defendant also inspected C.S.'s buttocks.

*21.    J.V. (Count 36)*
*Guilty one count 288(c)(1)*

J.V. was 14 when he started wrestling.  Defendant called J.V. aside to perform a nude skin inspection.  Defendant told J.V. to remove his underwear and defendant inspected J.V.'s penis and scrotum.  At defendant's instruction, J.V. lifted the tip of his penis and scrotum.

16

*22. K.K. (Counts 37-40)*
*Guilty one count 288(c)(1)*
*Three counts dismissed*

K.K. was 15 or 16 when defendant asked him to participate in a nude skin inspection. Defendant asked K.K. to lift his genitals. Defendant also examined K.K.'s buttocks. Other wrestlers were in the storage room at the time defendant inspected K.K.

*23. E.R. (Count 41)*
*Guilty one count 647(a)(1)*

E.R. was 15 when he joined the wrestling team. He was 16 when defendant conducted a nude skin inspection. Defendant asked E.R. to lift his scrotum. Defendant then told E.R. to turn around and spread his buttocks. E.R. complied with defendant's requests and tried to expedite the process because he was uncomfortable.

*24. J.D. (Count 42)*
*Guilty one count 288(a)*

In 1995 or 1996, when J.D. was 13 and a student at Madrona Middle School, he participated on the wrestling team. Defendant told J.D. that he had to conduct a skin inspection to look for ringworm and that J.D. had to remove his clothing. Defendant turned off most of the lights for the skin inspection. Defendant touched J.D.'s penis and scrotum. J.D. testified: "He was manipulating my privates, left and right and lifting things up." Defendant visually inspected J.D.'s buttocks. Defendant touched J.D.'s back, arms, and legs.

25.    *F.R. (Counts 43-45)*
       *Dismissed After Jurors Unable to Unanimously*
       *Determine if the Case Was Prosecuted Within the*
       *Statute of Limitations*

F.R. testified that in 1991, when he was a middle school student, he went on a camping trip with defendant. Defendant touched F.R.'s penis with his penis; defendant penetrated F.R.'s anus with his penis, and defendant orally copulated F.R. Defendant asked F.R. to orally copulate him. F.R. testified that he did not report this incident for 22 years.

F.R. admitted that he was expelled from middle school, suffered from mental illness, and suffered convictions for attempted robbery and vandalism. F.R.'s mother confirmed that F.R. and one of his teachers went on a camping trip. She testified that after the camping trip, F.R.'s behavior began to change.

According to defendant, his only interaction with F.R. was when he reported F.R. for dealing drugs. Defendant denied taking F.R. on a camping trip and denied all of the conduct F.R. described.

26.    *S.I. (Count 46)*
       *Guilty one count 647.6(a)(1)*

S.I. joined the wrestling team when he was 16. Defendant conducted a nude skin inspection on S.I. Defendant lifted S.I.'s penis for a better view of his testicles.

18

## PROCEDURAL BACKGROUND

Defendant's trial counsel advocated jurors find defendant lacked the requisite sexual intent when he committed the nude skin examinations. We quote the arguments and related jury instructions on circumstantial evidence and the burden of proof extensively because they are the basis for defendant's appeal.

### A.    Jury Instructions

Jurors were instructed pursuant to CALCRIM No. 220 on the presumption of innocence and the requirement of proving a defendant guilty beyond a reasonable doubt.[4] Defendant does not contend that these instructions were error.

With respect to circumstantial evidence, jurors were instructed pursuant to CALCRIM No. 224 that: "Before you may

---

[4] Jurors were instructed: "The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial. [¶] A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically tell you otherwise. [¶] Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. [¶] In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty."

19

rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty.  If you draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence.  However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

With respect to proof of defendant's intent, jurors were instructed consistent with CALCRIM No. 225:  "Before you may rely on circumstantial evidence to conclude that the defendant had the required intent, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant had the required intent.  If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions supports a finding that the defendant did have the required intent and another reasonable conclusion supports a finding that the defendant did not, you must conclude that the required intent was not proved by the circumstantial evidence.  However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

Jurors were also instructed about the intent necessary to commit a lewd act and a lewd act with a child under 14. Specifically, the court instructed jurors that these crimes could be committed if defendant willfully caused a child to touch his body "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child."  It was not required to actually arouse the perpetrator or the child.  The jury

20

was further instructed that the specified intent was not required if the "defendant willfully touched any part of a child's body either on the bare skin or through the clothing."

With respect to counts 43, 44, and 45 involving F.R., jurors were instructed that defendant could not be convicted unless the prosecution commenced within one year of when the crimes were or should have been discovered.

Finally, jurors were instructed:  "Do not let bias, sympathy, prejudice, or public opinion influence your decision."

## B.    Defense Counsel's Opening Statement

During his opening statement, defense counsel advocated as follows:  "[T]he evidence will show you there was never any sexual intent."  Counsel continued:  "[S]o the reality is, Mr. Snider made a bad judgment call—that's what the evidence will show you—with respect to those kids that had skin infections. But what you will not see is any evidence of sexual gratification." According to counsel, "[w]hat you are going to see here is a witch hunt."

## C.    Prosecutor's Closing Argument

During closing argument, the prosecutor argued:  A key issue was "whether or not the defendant had a sexual desire or sexual interest in the kids.  And that is really at the heart of the matter here.  Did he have a sexual desire or sexual interest in the kids?  And that is undeniably a yes answer."  The prosecutor continued:  "The evidence in this case proves *beyond a reasonable doubt* that the defendant had a sexual desire or interest when he did the skin checks."  (Italics added.)

21

## D.    Defense Closing Argument

During his closing argument, defense counsel emphasized the same defense raised in his opening statement—lack of sexual intent.  Counsel argued that the evidence did not show beyond a reasonable doubt the skin examinations were performed for sexual gratification.  Counsel argued that defendant was "hypersensitive" about skin diseases and emphasized that defendant had suffered from ringworm.  Counsel argued that the pornography on defendant's computer could be explained as "pop-ups."

Defense counsel stressed the jury instructions concerning circumstantial evidence.  He argued:  "And so what is this case? This case is a circumstantial case.  I will show you.  Two jury instructions deal with circumstantial evidence."  Counsel then read CALCRIM Nos. 224 and 225 and argued that because two conclusions could be drawn from the circumstantial evidence, jurors must conclude that the prosecution did not prove defendant's sexual intent.

## E.    Prosecution Rebuttal Argument

In response to defense counsel's argument on circumstantial evidence, during her rebuttal, the prosecutor argued:  "This is CALCRIM 224:  "Before you rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty.  If you can draw two or more reasonable—reasonable conclusions.  [¶]  So if you can draw two reasonable conclusions, one points to innocence, one points to guilt, then you must vote with innocence."

22

The prosecutor then argued that the inferences requested by defendant were not reasonable. "I have to ask you, does the defendant's excuses in his case sound reasonable to you?  I want to start off with the bleached penis.  I really hope none of you believe[s] that, because there was no evidence to support that. There was no medical testimony to support that. . . . [¶]  And, lastly, if this is so important to him, he never showed us photos of his bleached penis.  You know why, because it doesn't exist.  It is not the truth.  And again, even if that was the truth, that does not give you the right to go and skin check these teenaged boys and have them . . . manipulate their genitals to check for skin diseases."

"All the coaches in this case that have testified, even a C.I.F. official [the governing body for high school sports] said that that was absurd, that they would never do that, that they would refer them to a doctor if there were real issues with their genitals.  [¶]  And what about the porn sites being there because . . . the defendant was trying to teach homosexuality to his daughter.  Really?  [¶]  So you were teaching homosexuality to your daughter one day, and you go, leave the room, come back and all of a sudden these porn sites came out.  [¶]  Does that make sense to you?  Does that sound reasonable to you?  [¶] Then . . . how do you explain . . . the other multiple visits to other porn sites on other different occasions, on different devices?"

She continued as follows: "Ladies and gentlemen, you really need to consider all the evidence in this case and you will find that the people's explanation is the *most reasonable* in this case."  (Italics added.)  The prosecutor argued that defendant knew his conduct was wrong.  "You know what the defense attorney didn't answer or address?  If Mr. Snider really had

23

nothing to hide, why not let the parents be aware of these nude genital skin checks." "Why make the students get naked with their penises and scrotums hanging out to give them a massage for their injuries that are on their legs or back?" "Why lie about being a state wrestling champion?" "Why are there multiple visits to the same similar sites, such as boypornplus.com, gaytube.com, gay boy video . . . over different periods of time?" "And if he cared so much about skin disease, why didn't he do anything for the female wrestlers?" "[W]hy lie to Eric Spotts, the assistant principal?"

The prosecutor concluded with the following: "Ladies and gentlemen, I want you to take all this evidence and look at the totality of the situation, and like my colleague said, this evidence, . . . , will lead you to the *most reasonable* and natural conclusion, and that is the defendant is guilty of all the crimes. He's guilty. And I ask, *let's just give justice to the victims*. Let's make him take responsibility. [¶] And I respectfully—the People respectfully ask that you find him guilty." (Italics added.)

## F. Conviction and Sentence

Defendant was convicted of 3 counts of lewd act on a child under 14 (counts 1, 42, and 47) (§ 288(a)); 26 counts of lewd act on a child (§ 288(c)(1)); and 8 counts of annoying or molesting a child (§ 647.6 (a)(1).)[5] Multiple victim enhancements in counts 1, 42, and 47 were found true.

Jurors did not reach a verdict on the counts involving F.R. because they were unable to agree unanimously on whether the case was prosecuted before the end of the limitations period. The

---

[5] Respondent incorrectly states that defendant suffered 41 convictions.

trial court ultimately dismissed those counts in the interest of justice.  Counts 38-40 also were dismissed.

The trial court sentenced defendant to prison for an indeterminate term of 45 years to life and a determinate prison term of 15 years 4 months, and to 2,184 days in county jail.

## DISCUSSION

Defendant argues that the prosecutor committed misconduct during closing argument by diminishing the burden of proof and inflaming the passions of jurors.  He recognizes that the issue is forfeited, but argues this court should consider it because his counsel was deficient in failing to object to the alleged prosecutorial misconduct.[6]  As we shall explain, defendant demonstrates neither prosecutorial misconduct nor ineffective assistance of counsel.  Even assuming misconduct occurred, defendant cannot show that but for his counsel's error in failing to object to the misconduct, the result of the proceeding would have been different. (*People v. Centeno* (2014) 60 Cal.4th 659, 674 [defendant asserting ineffective assistance of counsel must demonstrate prejudice] (*Centeno*).)

---

[6]  " 'A defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion, and on the same ground, the defendant objected to the action and also requested that the jury be admonished to disregard the perceived impropriety.'  [Citation.]  A defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel." (*People v. Lopez* (2008) 42 Cal.4th 960, 966.)

25

## I.    The Prosecutor Did Not Commit Misconduct by Diluting the Burden of Proof

"If a charge of prosecutorial misconduct is based on a prosecutor's argument to the jury, the appellate court must consider whether there is a reasonable likelihood the jury construed or applied any of the challenged statements in an objectionable manner." (*People v. Cowan* (2017) 8 Cal.App.5th 1152, 1159; cf *People v. Daveggio and Michaud* (2018) 4 Cal.5th 790 [considering instruction on reasonable doubt in context of all instructions].)  "The court must consider the challenged statements in the context of the argument as a whole to make its determination.  (*Cowan*, at p. 1159.)  Quoting *Centeno*, *supra*, 60 Cal.4th at p. 673, defendant argues that the prosecutor misstated the burden of proof "by erroneously 'confound[ing] the concept of rejecting unreasonable inferences with the standard of proof beyond a reasonable doubt' and 'suggest[ing] that the jury could find defendant guilty based on a reasonable account of the evidence.' "

In *Centeno*, the prosecutor emphasized reasonable doubt during her rebuttal argument by using a visual display depicting the geographical outline of California.  (60 Cal.4th at pp. 664, 665.)  The prosecutor argued that the witnesses represented partial descriptions of the cities in California and further argued: " 'What you have is you have incomplete information, inaccurate information, wrong information, San Diego in the north of the state, and missing information, San Bernardino has not even been talked about, but is there a reasonable doubt that this is California?  No.  You can have missing evidence, you can have questions, you can have inaccurate information and still reach a decision *beyond a reasonable doubt*." (*Id*. at p. 665, italics added.)

26

The high court concluded that: "The use of an iconic image like the shape of California . . . , unrelated to the facts of the case, is a flawed way to demonstrate the process of proving guilt beyond a reasonable doubt.  These types of images necessarily draw on the jurors' own knowledge rather than evidence presented at trial.  They are immediately recognizable and irrefutable.  Additionally, such demonstrations trivialize the deliberative process, essentially turning it into a game that encourages the jurors to guess or jump to a conclusion." (*Centeno*, *supra*, 60 Cal.4th at p. 669.)

The high court further reasoned that the jurors' task in evaluating a criminal defendant's culpability required considering whether the prosecution met its burden with respect to each element and was not analogous to solving a picture puzzle which could be achieved based on evidence outside the record. (*Centeno*, *supra*, 60 Cal.4th at pp. 669-670.)  "Instead the prosecutor offered a theoretical analogue, unrelated to the evidence, purporting to relate the exacting process of evaluating the case to answering a simple trivia question."  (*Id*. at p. 671.) The prosecution told jurors that the outline was an outline of a state, presuming the conclusion without evidence of it.  (*Id*. at p. 670.)  Further, it concealed the importance of assessing witness credibility.  (*Ibid*.)  The outline of the state had nothing to do with the evidence presented in the case.  (*Id*. at p. 671.)

*Centeno* is inapposite.  Most importantly, the prosecutor did not argue an iconic image unrelated to the case was relevant to the burden of proof—the issue in *Centeno*.  The prosecutor did not suggest that considering proof beyond a reasonable doubt was akin to solving a puzzle or otherwise trivialize the important task jurors faced.  The challenged portion of the argument in this case

27

concerned circumstantial evidence, not the burden of proof. There is no merit to defendant's argument that *Centeno* shows the prosecutor here committed misconduct.

Further, in contrast to *Centeno*, here there was no "reasonable likelihood the jury construed or applied any of the challenged statements in an objectionable manner." (*People v. Cowan, supra*, 8 Cal.App.5th at p. 1159.) When viewed in context, the prosecutor's argument concerning circumstantial evidence properly suggested that jurors distinguish between reasonable and unreasonable versions of the evidence. "It is permissible to argue that the jury may reject impossible or unreasonable interpretations of the evidence and to so characterize a defense theory. [Citation.] It is permissible to urge that a jury may be convinced beyond a reasonable doubt even in the face of conflicting, incomplete, or partially inaccurate accounts. [Citation.] It is certainly proper to urge that the jury consider all the evidence before it." (*Centeno, supra*, 60 Cal.4th at p. 672.) The prosecutor read CALCRIM No. 224 to jurors and then asked whether defendant's version was reasonable.

Defendant's claim that the prosecutor's argument misled jurors into believing that they could convict defendant if the prosecution proved only that its case was reasonable focuses on four words in the prosecutor's argument, taking them out of their context. The prosecutor twice referred to the prosecution's version as the "most reasonable." Although the phrase inaccurately distinguishes reasonable from most reasonable, the prosecutor did not argue that jurors could convict defendant if they found the People's version more reasonable than the defendants. Indeed, in her rebuttal argument, the prosecutor reminded the jury that if it found defendant's version reasonable,

28

it had to vote for innocence.  Both the prosecutor and defense counsel indicated that sexual intent had to be proven beyond a reasonable doubt.  The thrust of the prosecutor's rebuttal argument was that defendant's version was unreasonable, which indisputably is not misconduct.[7]  (*People v. Centeno, supra,* 60 Cal.4th at p. 667 ["When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was a 'reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.' "].)  Because the prosecutor did not commit misconduct, defense counsel was not ineffective in failing to object to prosecutorial misconduct.

---

[7] Other cases finding prosecutorial misconduct when a prosecutor's argument reduces the burden of proof do not assist defendant because here the prosecutor did not dilute the burden of proof.  (*People v. Ellison* (2011) 196 Cal.App.4th 1342 and *State v. Sappington* (Kan. S.Ct. 2007) 285 Kan. 176.)  In *Ellison*, the appellate court concluded that "the prosecutor improperly attempted to lessen the People's burden of proof by arguing to the jury that the beyond-reasonable-doubt standard required the jury to determine whether defendant's innocence was reasonable." (*Ellison, supra,* 196 Cal.App.4th at p. 1353.)  The *Sappington* court concluded that the prosecutor improperly suggested to jurors that they could convict the defendant if they believed it was reasonable he committed the crime.  (*Sappington, supra,* 285 Kan. at p. 186.)  The prosecutor did not make an analogous argument in this case.  She did not argue that jurors should decide if innocence was reasonable.  Nor did she argue that jurors could convict if they concluded the prosecutor's version was reasonable.

Even assuming misconduct, the error was harmless under any standard.[8]  Jurors were properly instructed that they must find each element beyond a reasonable doubt and properly instructed on the presumption of innocence.  (See *People v. Cortez* (2016) 63 Cal.4th 101, 131.)  " '[P]rosecutorial commentary should not be given undue weight in analyzing how a reasonable jury understood . . . instructions.  Juries are warned in advance that counsel's remarks are mere argument, missteps can be challenged when they occur, and juries generally understand that counsel's assertions are the "statements of advocates."  Thus, argument should "not be judged as having the same force as an instruction from the court." ' "  (*Id.* at pp. 131-132.)  Additionally, defense counsel reminded jurors of their burden, arguing: "Beyond a reasonable doubt.  Now, what is interesting about that is that burden of proof applies not only to each charge, but it applies to each and every element of the charge."

Further, although defendant characterizes this case as a close one involving conflicting evidence, there was *no* evidence that he conducted the genital inspections and massages without a sexual intent.  His attorney made that argument, but defendant did not testify that he had no intent to arouse himself or the

---

[8]  Defendant's argument is in the context of an ineffective assistance of counsel claim.  In this context, " '[p]rejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.' " (*People v. Pettie* (2017) 16 Cal.App.5th 23, 80; *People v. Lopez, supra*, 42 Cal.4th at p. 966.)  Defendant argues that the more rigorous standard under *Chapman v. California* (1967) 386 U.S. 18, 24 should apply but cites no authority applying this standard in the context of a claim of ineffective assistance of counsel.  In any event, the result is the same applying *Chapman*.

students.  Defendant's stated intent of eradicating skin disease does not exclude a concomitant intent to sexually arouse himself or the students.

On the other side, strong evidence supported the inference that defendant intended to arouse himself.  Defendant performed skin examinations on portions of the student's body that would neither touch other wrestlers nor the wrestling mat, casting doubt on the explanation that they would help eradicate skin disease.  The fact that the girls did not undergo skin examinations even though they used the same mats as the boys further cast doubt on defendant's stated motivation.  Defendant massaged students near their groins even when that was not the injury site and offered no medical explanation for this conduct.  Significantly, the extensive nature of the pornography found on defendant's home computer and other electronic devices supported the inference that he was sexually interested in adolescent boys.  (Defendant's effort to explain the pornography accounted for only one isolated incident, not the videos watched on different days.)  Additionally, defendant lied to the assistant principal when asked about nude skin checks, supporting a consciousness of guilt.  Contrary to defendant's argument, the case was not close.  In short, defendant demonstrates no prejudice from the alleged misconduct.

## II.    The Prosecutor Did Not Commit Prejudicial Misconduct By Appealing to the Passions of the Jurors

As noted, at the conclusion of her rebuttal, the prosecutor argued: "He's guilty.  And I ask, let's just give justice to the victims.  Let's make him take responsibility."  Defendant argues

that this statement permitted jurors to consider sympathy for the victims in rendering their verdict.

Appeals to the sympathy or passions of jurors are improper. (*People v. Fields* (1983) 35 Cal.3d 329, 362.) Here, the prosecutor's brief comment—to give justice to the victims—even if inappropriate "constituted a mere passing reference of no real import to the case." (*People v. Dykes* (2009) 46 Cal.4th 731, 772.) When the prosecutor's entire argument is placed in context, it cannot reasonably be understood to suggest jurors should convict defendant on any basis other than finding the evidence demonstrated his guilt beyond a reasonable doubt. The isolated statement defendant emphasizes cannot reasonably be understood to invoke emotions or cloud juror's deliberations. The prosecutor did not exhort jurors to step into the shoes of victims. Nor did she describe the harm suffered by the victims as a consequence of defendant's conduct. Nor did she ask jurors to consider the impact on the victims' families.

Assuming the argument constituted misconduct, defendant was not prejudiced. (See *People v. Kipp* (2001) 26 Cal.4th 1100, 1130 [finding no prejudice where brief comment by prosecutor appealing to sympathy of jurors was mild and not repeated]; *People v. Powell* (1974) 40 Cal.App.3d 107, 166 [prosecutor's brief references to victim's family not prejudicial].) As explained above, the evidence against defendant was largely undisputed and overwhelming. This was not a close case. Additionally, jurors properly were instructed: "Do not let bias, sympathy, prejudice, or public opinion influence your decision." We must presume the jurors followed the court's instruction. (*People v. Adams* (2014) 60 Cal.4th 541, 578.) And if jurors

had relied on sympathy for the victims to convict, they would have convicted defendant of all of the charges.

Our high court rejected an argument almost identical to defendant's in *People v. Medina* (1995) 11 Cal.4th 694, 759-760. In that case, the prosecutor "asked the jury to 'do the right thing, to do justice, not for our society, necessarily or exclusively, but for Craig Martin, an 18 year-old boy who was just working at a gas station one night.' " (*Id.* at p. 759.)  The high court concluded that there was no "reasonable probability that the prosecutor's brief and isolated comments could have influenced the jury's guilt determination." (*Id.* at p. 760.)  Even if the remark in this case were misconduct, *Medina* compels the conclusion such an isolated remark was not prejudicial.

## III.   No Cumulative Prejudice

Finally, defendant's argument that the prosecutor's argument considered as a whole was cumulatively prejudicial is not persuasive.  "Under the 'cumulative error' doctrine, we reverse the judgment if there is a 'reasonable possibility' that the jury would have reached a result more favorable to defendant absent a combination of errors." (*People v. Poletti* (2015) 240 Cal.App.4th 1191, 1216.)

Defendant fails to demonstrate prejudice flowing from the assumed cumulative errors.  " '[A]rguments of counsel "generally carry less weight with a jury than do instructions from the court." ' " (*People v. Katzenberger* (2009) 178 Cal.App.4th 1260, 1268.)  The claimed errors were brief and isolated.  Defendant's argument largely ignores the overwhelming nature of the evidence against him and the weakness of his only defense, which was unsupported even by his own testimony.  " 'Lengthy criminal trials are rarely perfect, and this court will not reverse a

33

judgment absent a clear showing of a miscarriage of justice.' " (*People v. Poletti, supra,* 240 Cal.App.4th at p. 1217.)

## DISPOSITION

The judgment is affirmed.

BENDIX, J.

We concur:

CHANEY, Acting P. J.

JOHNSON, J.

Filed 6/21/18

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION ONE

COURT OF APPEAL – SECOND DIST.

# FILED

## Jun 21, 2018

**JOSEPH A. LANE, Clerk**

ccassidy          **Deputy Clerk**

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>THOMAS JOSEPH SNIDER,<br><br>  Defendant and Appellant. | B280572<br><br>(Los Angeles County<br>Super. Ct. No. YA092267)<br><br>ORDER MODIFYING<br>OPINION AND DENYING<br>PETITION FOR<br>REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed June 5, 2018 is modified as follows:

1.     On page 7, at the end of the last paragraph, the following is added:

> Defendant testified that he never had "locker room fantasies with young boys[.]"  He testified that the students were not placed in sexual positions when he

massaged them. He did not believe that a naked student with the student's legs propped over his legs reflected a sexual position. Defendant denied being attracted to "the boy wrestlers and not the girl wrestlers[.]"

2. On page 30, the last paragraph, which continues on page 31, is deleted and replaced with the following paragraph:

> Further, although defendant characterizes this case as a close one involving conflicting evidence, there was scant evidence that he conducted the genital inspections and massages without a sexual intent. His attorney made that argument, but defendant did not testify that he had no intent to arouse himself or the students. At most, he testified that he did not have locker room fantasies, and did not believe that he placed the boys in a sexual situation or position when he massaged the boys who were covered only in a towel. Defendant's stated intent of eradicating skin disease does not exclude a concomitant intent to sexually arouse himself or the students.

There is no change in the judgment.
Appellant's petition for rehearing is denied.
NOT TO BE PUBLISHED.

_____

CHANEY, Acting P. J.          JOHNSON, J.          BENDIX, J.

2

**ATTACHMENT B**

**PETITION FOR REVIEW**

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | ) | CASE NO. _____ |
| | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THOMAS SNIDER, | ) | |
| | ) | |
| Defendant and Appellant. | ) | |
| _____ | ) | |

Court of Appeal, Second Appellate District, Case No.: B280572
Los Angeles County Superior Court Case No.: YA092267
The Honorable Mark Arnold, Judge Presiding

_____

**PETITION FOR REVIEW
TO EXHAUST STATE REMEDIES
(Cal. Rules of Court, rule 8.508)**

Joshua L. Siegel, Attorney at Law
State Bar Number 262941
171 Pier Ave., # 314
Santa Monica, CA 90405
(310) 463-5346
siegel.joshua@gmail.com
Attorney for appellant
Thomas Snider

## TABLE OF CONTENTS

Page(s)

PETITION FOR REVIEW TO EXHAUST STATE REMEDIES. . . . . . . . 4

STATEMENT OF THE UNDERLYING PROCEEDINGS. . . . . . . . . . . . 5

STATEMENT OF FACTUAL AND LEGAL BASIS FOR FEDERAL CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.      THE PROSECUTOR COMMITTED PREJUDICIAL MISCONDUCT, AND VIOLATED APPELLANT'S FEDERAL DUE PROCESS RIGHTS, BY MISSTATING THE BURDEN OF PROOF IN CLOSING ARGUMENT, AND TO THE EXTENT THAT DEFENSE COUNSEL FORFEITED THIS CLAIM, COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE. . . . . . . . . . . . . . . 7

II.     THE PROSECUTOR COMMITTED PREJUDICIAL MISCONDUCT, AND VIOLATED APPELLANT'S FEDERAL DUE PROCESS RIGHTS, BY IMPROPERLY ARGUING THAT THE JURY SHOULD DO JUSTICE FOR THE VICTIMS, AND DEFENSE COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE BY FAILING TO OBJECT TO THIS ARGUMENT. . . . . . . . . 8

III.    THE CUMULATIVE EFFECT OF THESE ERRORS REQUIRES REVERSAL.  9

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

WORD COUNT CERTIFICATION. . . . . . . . . . . . . . . . . . . . . . . . . . . 12

EXHIBIT A - OPINION OF THE COURT OF APPEAL. . . . . . . . . . . . 13

EXHIBIT B - ORDER OF THE COURT OF APPEAL
MODIFYING OPINION AND DENYING REHEARING. . . . . . . . . . . 14

## TABLE OF AUTHORITIES

Page(s)

### UNITED STATES CONSTITUTIONAL AMENDMENTS

5th . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10

6th . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10

14th . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10

### CASES

*People v. Centeno* (2014) 60 Cal.4th 659. . . . . . . . . . . . . . . . . . . . . . . . . 8

*People v. Fields* (1983) 35 Cal.3d 329. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*People v. Medina* (1995) 11 Cal.4th 694. . . . . . . . . . . . . . . . . . . . . . . . . 9

*People v. Redd* (2010) 48 Cal.4th 691. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

### PENAL CODE SECTIONS

288. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

647.6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

667.61. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1118.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

### CALIFORNIA RULES OF COURT, RULES

8.500. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8.508. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

### CALCRIM NUMBERS

224. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | ) CASE NO. _____ |
| | ) |
| | ) (Court of Appeal, |
| Plaintiff and Respondent, | ) Case No. B280572) |
| | ) |
| vs. | ) (Los Angeles County |
| | ) Superior Court, Case No. |
| THOMAS SNIDER, | ) YA092267) |
| | ) |
| Defendant and Appellant | ) |
| _____ | ) |

## PETITION FOR REVIEW TO EXHAUST STATE REMEDIES

To the Honorable Chief Justice Tani Gorre Cantil-Sakauye, and to the Honorable Associate Justices of the Supreme Court of the State of California:

Appellant Thomas Snider, by and through his appointed counsel, respectfully files this petition for review for the sole purpose of exhausting his state remedies prior to presenting his federal constitutional claims in federal court. This case presents no grounds for review under California Rules of Court, rule 8.500(b). (Cal. Rules of Court, rule 8.508.)

A copy of the unpublished opinion of the Court of Appeal, Second Appellate District, Division One, filed on June 5, 2018, which affirmed the judgment, is attached hereto as Exhibit A. A copy of the Court of Appeal's June 21, 2018, order modifying the opinion and denying rehearing is attached hereto as Exhibit B.

4

## STATEMENT OF THE UNDERLYING PROCEEDINGS

An information was filed on July 7, 2015, in the Los Angeles Superior Court, charging appellant with six counts of lewd acts on a child under age 14 (§[1] 288, subd. (a); counts 1, 42-45, & 47), 32 counts of lewd acts on a child age 14 or 15 (§ 288, subd. (c)(1); counts 2, 3, 6-12, 14-26, & 28-37), and nine counts of child molestation (§ 647.6, subd. (a)(1); counts 4, 5, 13, 27, 38-41, & 46). The information further alleged that appellant committed counts 1, 42, and 47 against more than one victim. (§ 667.61, subds. (b) & (e).) (3 CT 478-505.)

During the trial, the trial court granted the prosecution's motion to amend the information to change the alleged victim's name in counts 37-39. (3 CT 677-680, 681-684; 7 RT 2439-2440, 2701-2703.) The trial court also dismissed count 40 on the prosecution's motion. (3 CT 677-680; 7 RT 2439-2440.)

At the close of the prosecution's case, the trial court granted appellant's motion to dismiss (§ 1118.1) as to counts 38 and 39, but denied this motion as to the remaining counts. (3 CT 685-688; 8 RT 3056-3058.)

The jury was unable to reach a verdict on counts 43-45, and the trial court declared a mistrial as to those counts. (4 CT 817-819; 9 RT 4501-4504.) The trial court subsequently dismissed counts 43-45 on the prosecution's motion. (4 CT 965; 8 RT 4832.)

The jury found appellant not guilty in counts 12, 23, 32, and 34. The jury found appellant not guilty of the charged offense but guilty of the lesser offense of child molestation (§ 647.6, subd. (a)(1)) in counts 22 and 26. The jury found appellant guilty in the remaining counts, and found the multiple

---

[1]

Undesignated statutory references are to the Penal Code.

victim allegation in counts 1, 42, and 47 true. (4 CT 765-812, 817-840; 9 RT 4505-4513, 4519-4520.)

The trial court sentenced appellant to a determinate sentence of 15 years, four months, to a total of 2,184 days on the misdemeanor counts to run consecutively, and to an indeterminate sentence of 45 years to life. (4 CT 937-967; 9 RT 4826-4833.)

Appellant filed a timely notice of appeal on November 16, 2016. (4 CT 968-969.)

## STATEMENT OF FACTUAL AND LEGAL BASIS
## FOR FEDERAL CLAIMS

**I. THE PROSECUTOR COMMITTED PREJUDICIAL MISCONDUCT, AND VIOLATED APPELLANT'S FEDERAL DUE PROCESS RIGHTS, BY MISSTATING THE BURDEN OF PROOF IN CLOSING ARGUMENT, AND TO THE EXTENT THAT DEFENSE COUNSEL FORFEITED THIS CLAIM, COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE.**

Defense counsel did not object when the prosecutor stated the following in rebuttal:

> This is CALCRIM No. 224. "Before you rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty. If you can draw two or more [9 RT 3640] reasonable – reasonable conclusions. So if you can draw two reasonable conclusions, one points to innocence, one point to guilt, then you must vote with innocence. I have to ask you, does the defendant's excuses in his case sound reasonable to you?...

(9 RT 3640-3641.)

The prosecutor then argued that certain portions of appellant's trial testimony were not reasonable (9 RT 3641-3642) and continued:

> Ladies and gentlemen, you really need to consider all the evidence in this case and *you will find that the people's explanation is the most reasonable in this case.*

(9 RT 3642, *italics added*.)

The prosecutor subsequently discussed various factual points in the case (9 RT 3642-3650), and concluded with the following:

> Ladies and gentlemen, I want you to take all this evidence and look at the totality of the situation...*this evidence, which is a strong current, will lead you to the most reasonable and natural conclusion, and that is that the defendant is guilty*

7

of all the crimes...The people respectfully ask that you find him guilty.

(9 RT 3650, *italics added*.)

As stated fully in appellant's opening brief (AOB, Section I [at pp. 28-43]), this argument misstated the burden of proof, and therefore amounted to misconduct under state and federal law (U.S. Const., 5th & 14th Amends.), by erroneously "confound[ing] the concept of rejecting unreasonable inferences with the standard of proof beyond a reasonable doubt" and "suggest[ing] that the jury could find defendant guilty based on a reasonable account of the evidence." (*People v. Centeno* (2014) 60 Cal.4th 659, 672.) A reasonably competent attorney would have objected to this argument on that basis, and defense counsel's failure to so object thus amounted to ineffective assistance of counsel. (*Id*. at 674-676 [defense counsel ineffective in failing to object to prosecutor's misstatement of burden of proof]; U.S. Const., 6th & 14th Amends.) And since there is at least a reasonable chance that this argument caused the jury to convict appellant based on a lesser standard than proof beyond a reasonable doubt, when the jurors could easily have given appellant the benefit of the doubt as to the disputed intent elements of the charges in the absence of this argument, this improper argument was prejudicial as to all counts. Appellant's convictions must therefore be reversed.

**II. THE PROSECUTOR COMMITTED PREJUDICIAL MISCONDUCT, AND VIOLATED APPELLANT'S FEDERAL DUE PROCESS RIGHTS, BY IMPROPERLY ARGUING THAT THE JURY SHOULD DO JUSTICE FOR THE VICTIMS, AND DEFENSE COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE BY FAILING TO OBJECT TO THIS ARGUMENT.**

Defense counsel also did not object when the prosecutor concluded her rebuttal argument with the following:

He's guilty. *And I ask, let's just give justice to the*

*victims.* Let's make him take responsibility...Find him guilty.

(9 RT 3650, *italics added*.)

As explained in appellant's opening brief (AOB, Section II [at pp. 44-50]), this argument improperly appealed to the passions and sympathy of the jury, and therefore constituted prosecutorial misconduct under state and federal law (U.S. Const., 5th & 14th Amends.; see also *People v. Fields* (1983) 35 Cal.3d 329, 362; *People v. Redd* (2010) 48 Cal.4th 691, 742; *People v. Medina* (1995) 11 Cal.4th 694, 759-760). A reasonably competent attorney would have objected to this argument on this basis, and defense counsel was thus constitutionally ineffective in failing to object to this argument (U.S. Const., 6th & 14th Amends.). And since there is a reasonable chance that this argument caused the jurors to disregard the defense evidence that the disputed intent elements were lacking and instead base their verdicts on passion and sympathy for the alleged victims, this argument and defense counsel's failure to object to it require reversal.

## III. THE CUMULATIVE EFFECT OF THESE ERRORS REQUIRES REVERSAL.

Finally, as shown in appellant's opening brief (AOB, Section III [at pp. 50-52]), the above errors in appellant's case were cumulatively prejudicial because they both affected the jury's determination of whether the prosecution had proven the disputed sexual intent elements. (I) The prosecutor's argument that the jurors should find appellant guilty because the prosecution's version was the "most reasonable" version of the evidence created a risk that the jury would convict appellant even if the jurors also had a reasonable doubt as to the disputed sexual intent element. And (II) the prosecutor's "give justice to the victims" argument created a risk that the jurors would based their verdicts on passion and sympathy rather than an objective review of the evidence,

9

especially in such an emotionally-charged case.

But even if these errors could be deemed harmless individually, these errors were cumulatively prejudicial because, had these errors not occurred, the jurors could easily have concluded from appellant's testimony about how he performed the skin checks and massages for medical purposes and to avoid the spread of infections that the disputed sexual intent elements had not proven beyond a reasonable doubt and thus appellant had to be acquitted on all counts. The cumulative effect of these errors is therefore greater than the sum of its parts.

As a result, even assuming that these errors, taken alone, were not sufficiently prejudicial as to warrant reversal, these errors, considered together, were prejudicial to appellant and deprived him of his constitutional rights to due process and to the effective assistance of counsel. (U.S. Const., 5th, 6th, & 14th Amends.) Appellant's convictions must be reversed for these reasons as well.

**CONCLUSION**

For the reasons stated above, appellant's convictions must be reversed.

Respectfully submitted,

DATED: July 9, 2018                    Joshua L. Siegel, Attorney at Law
                                       SBN 262941
                                       171 Pier Ave., # 314
                                       Santa Monica, CA 90405
                                       Attorney for appellant

11

## WORD COUNT CERTIFICATION

I certify that this document was prepared on a computer using Corel WordPerfect, and that, according to that program, this document contains 1,476 words.


By: Joshua L. Siegel
Attorney for appellant

**ATTACHMENT C**

**ORDER OF THE CALIFORNIA SUPREME COURT**

**RE: PETITION FOR REVIEW**

# *People v. Snider*

Supreme Court of California

August 15, 2018, Opinion Filed

S249873

**Reporter**

2018 Cal. LEXIS 6290 *

PEOPLE v. THOMAS JOSEPH SNIDER.

**Prior History: [*1]** Second Appellate District, Division One, No. *B280572*.

*People v. Snider, 2018 Cal. App. Unpub. LEXIS 3855 (Cal. App. 2d Dist., June 5, 2018)*

## Opinion

Petition for review denied.

---

End of Document

GEORGE SCHRAER